Peoria, Decatur and Evansville Railway Company

*v.*

The People *ex rel.* A. E. D. Scott, Collector.

*Filed at Springfield March 27, 1886.*

1.  Taxation — *municipal taxation—power implied, where there is no express grant—as, when power is given to create a debt.* When the legislature confers authority on a county or other municipal body having the power to levy taxes, to contract a debt for some specific object, but makes no special provision for its payment, the very act of conferring the power to incur the liability, by implication also confers the power to levy the necessary taxes for its discharge.

2.  Same—*taxation by counties—extent of the power, as to amount, for county purposes, and to pay preëxisting obligations.* Section 121, chapter 120, and the sixth clause of section 25, chapter 34, of the Revised Statutes, when construed together, as they must be, mean, that unless authorized by a vote of the people the county board has no power to levy a tax for county purposes, exclusive of indebtedness existing at the time of the adoption of the present constitution, the aggregate amount of which will exceed seventy-five cents on each one hundred dollars' valuation of taxable property. In addition to this, the board may levy an annual tax, not to exceed one dollar on the hundred, to pay the principal and interest of any county indebtedness that may have existed at the time of the adoption of the constitution.

3.  Where a county has subscribed to the capital stock of a railway company, and issued its bonds therefor, under a clause in the charter of the company providing that any incorporated town, city, or any county or township subscribing, etc., as aforesaid, shall, by its proper authorities, annually thereafter levy and collect a sufficient tax on its assessed property to pay the interest on its bonds so issued as aforesaid, it will be obligatory on the county board to annually thereafter levy and collect a sufficient tax to pay the interest on its bonds, and the principal when due.

4.  And where a county is authorized by railway charters to issue its bonds in aid of railway companies on a vote of the people, and to raise money by a tax to pay the same, with the annual interest, it is not essential that the rate per cent of the tax to be levied should be named. In such case the liability the county is permitted to incur, and for the liquidation of which it is authorized to levy a tax, is sufficient to mark the extent of its power to raise money by taxation.

5.  Same—*presumption in favor of validity of tax—burden of proof.* It is the settled doctrine of this court that a party objecting to the enforcement of a tax, assumes the burden of showing its invalidity. The presumption is

that the tax is just, and that all officers having any connection with it have properly discharged their duties. These presumptions can only be overcome by clear and explicit testimony.

6. So when a county having outstanding corporate bonds bearing interest, some of which are clearly valid obligations, levies a tax in excess of its power except as to such indebtedness, and it is not shown that any of such tax is levied for the payment of any illegal or invalid bonds, or interest thereon, a party can not successfully resist an application for judgment against his lands for such county taxes.

7. Constitutional law—*impairing the obligation of contracts—as, in limiting the power of municipal corporation to levy taxes in discharge of preëxisting obligations.* All legislative acts passed after the contracting of a valid debt by a county or other municipal corporation, which, if enforced, would deprive it of the means of payment to any considerable extent, such as a law materially diminishing its powers of taxation, is void, as being in conflict with that provision of the Federal constitution which declares no State shall pass any law impairing the obligation of contracts.

8. So where, prior to the adoption of the present constitution, a county was authorized by law to issue its bonds in aid of the construction of railways, bearing interest, with power to levy such taxes as were necessary to pay the accruing interest, and the principal, when due, and did issue such bonds, a subsequent limitation of the taxing power of the county which would operate to deprive it of the means to meet its obligations, would, as to such outstanding indebtedness, be void, as impairing the obligation of contracts.

9. Judicial notice—*of railroad charters made public acts.* Where charters of railroad companies are declared to be public acts, the courts will take judicial notice of their provisions, and give effect to them the same as to any other public statutes.

Appeal from the County Court of Moultrie county; the Hon. J. Meeker, Judge, presiding.

Mr. J. S. Stevens, and Messrs. Stevens, Lee & Horton, for the appellant:

The power to raise taxes for all county purposes is vested in the board of supervisors in counties under township organization. In the same law granting the power is an inhibition on a greater levy than one dollar on the hundred to pay this class of indebtedness. Hurd's Stat. 1883, sec. 25, p. 315, clause 6; Hurd's Stat. 1884, sec. 121, p. 841.

Some of the questions involved in this tax are, in principle, decided in the case of *Webster* v. *People ex rel.* 98 Ill. 343, and in *Binkert* v. *Jansen,* 94 id. 283.

The board of supervisors clearly exceeded their authority when they ordered the levy of this tax in excess of one dollar, and to that extent the tax was void, and could be reached by objections to judgment in the county court or by bill in chancery. *Ramsey* v. *Haeger,* 76 Ill. 432; *Porter* v. *Railroad Co.* id. 561; *Mix* v. *People ex rel.* 72 id. 241.

This law does not impair the obligation of any contract. It simply applies to the remedy,—provides the means of carrying out the contract. The charters under which the bonds were issued do not attempt to fix the rate of taxation for the payment of either principal or interest.

Remedies which the law affords to enforce contracts, constitute no part of the contracts themselves. *Templeton* v. *Horne,* 82 Ill. 491.

The right of taxation and the power to fix the amount lies with the legislature, unless restricted by the constitution. With the wisdom of legislation upon this subject, courts have nothing to do, nor have they anything to do with the convenience or inconvenience of any regulation upon this subject.

Mr. S. M. Smyser, State's attorney, for the appellee:

The county tax in this case was levied to pay the interest and principal on bonds issued by the county under section 9 of an act to incorporate the Decatur, Sullivan and Mattoon Railroad Company, and to the Bloomington and Ohio Railroad Company, which authorized the municipalities issuing them, annually thereafter to levy and collect a sufficient tax to pay the interest thereon.

The bonds were issued under said acts, and the provisions thereof relative to taxation became a part of the contract between the county and the holder of the bonds. The legislature has no power to pass an act impairing the obligation

of that contract, and the clause of the Revised Statutes relied on by appellant does not purport to, nor can it be claimed that it does, repeal it.   *County of Pope* v. *Sloan*, 92 Ill. 177; *Chiniquy* v. *People*, 78 id. 570; 3 Private Laws 1869, p. 1, sec. 8; 2 id. p. 947, sec. 10.

It will be observed that the power of the county to levy taxes to pay the indebtedness created under said acts, is general, unlimited, and the acts mandatory, and that such power can not be taken away by subsequent legislation.   This principle is elementary, and the citation of authorities in support thereof is unnecessary.

Mr. Chief Justice Mulkey delivered the opinion of the Court:

This appeal presents for review an order of the county court of Moultrie county, overruling objections to part of a tax assessed against the Peoria, Decatur and Evansville Railway Company for the year 1883, and rendering judgment against it for the same.   The tax complained of, and to which objections were filed, was levied by the board of supervisors to pay a county indebtedness existing at the time of the adoption of the present constitution, mainly the principal and interest of certain railroad aid bonds, which are conceded to be valid and binding upon the county.   The entire tax levied for this purpose amounted to $1.38 on each hundred dollars' valuation of the taxable property in the county.   The appellant, conceding the validity of the tax to the extent of one dollar on the hundred, paid that amount, and filed its objections to the residue.   The gross amount of the excess complained of is $450.28.   The simple question for determination is, whether the county court, under existing laws, had power to levy a tax for the purpose stated, in excess of one dollar on the hundred.

The county board in levying county taxes can exercise such powers only as are expressly or by necessary implication con-

ferred upon it. The two following general provisions of the statute are the only ones that are supposed to have a direct bearing on the question:

Section 121, chapter 120, of the Revised Statutes, provides: "The county boards of the respective counties shall annually, at the September session, determine the amount of all taxes to be raised for county purposes, the aggregate amount of which shall not exceed the rate of seventy-five cents on the one hundred dollars' valuation of property, except for payment of indebtedness existing at the adoption of the present State constitution, unless authorized by a vote of the people of the county. When for several purposes, the amount shall be stated separately." This section of the statute, it will be perceived, is substantially the same as section 8, article 9, of the constitution.

It is declared by the sixth clause of section 25, chapter 34, of the Revised Statutes, that the county board shall have power "to cause to be annually levied and collected, taxes for county purposes, including all purposes for which money may be raised by the county by taxation, not exceeding seventy-five cents on the one hundred dollars' valuation, and in addition thereto, an annual tax not exceeding one hundred cents on the one hundred dollars' valuation, for the purpose of paying the interest and principal of indebtedness which existed at the time of the adoption of the constitution."

The manifest import of these provisions of the statute, when construed together, as they must be, is, that unless authorized by a vote of the people, the county board has no power to levy a tax for county purposes, exclusive of indebtedness existing at the time of the adoption of the present constitution, the aggregate amount of which will exceed seventy-five cents on each hundred dollars' valuation of taxable property. In addition to this, the board may levy an annual tax, not to exceed one dollar on the hundred, to pay the principal and interest of any county indebtedness that may

have existed at the time of the adoption of the present constitution. Such being the plain and palpable meaning of these provisions of the statute, it clearly follows they afford no authority for the levy by the county board of so much of the tax in question as is in dispute. Indeed, the appellee does not claim that they do, but maintains such authority is to be found in the charters of the Decatur, Sullivan and Mattoon Railroad Company and the Bloomington and Ohio River Railroad Company, the companies to which the bonds in question were issued.

The section of the charter of the company first above mentioned, provides, that "any incorporated town, city, county or township subscribing stock or donating to said railroad as aforesaid, shall, by its proper authorities, annually thereafter levy and collect a sufficient tax on its assessed property to pay the interest on its bonds so issued as aforesaid." (See 3 Private Laws, 1869, p. 1.) Section 8 of the charter of the latter company declares: "The several counties, cities, villages, incorporated towns, and the several townships in counties having township organization, through or near which said road shall be located, are hereby authorized to raise money by a tax to be levied upon all the real and personal property in the said several counties, * * * and to subscribe the same to the capital stock of said corporation hereby created, for the purpose of aiding in the construction and completion of said road; and the said several counties * * * are further authorized to issue bonds, drawing interest at the rate of ten per cent per annum." Section 10 provides, that "such county * * * shall levy such tax and subscribe to such corporation the amount thereof, to be determined or voted for at any such election, and shall issue to said corporation their bonds for such amount," etc. See 2 Private Laws, 1869, p. 947.

The first of these acts made it obligatory on the county board to "annually thereafter levy and collect a *sufficient* tax

on its assessed property to pay the interest on its bonds,"
etc.   The other act, as we construe it, authorized the county,
upon an affirmative vote of the people, to subscribe to the
capital stock of the company, issue interest-bearing bonds for
the amount, and *"to raise money by a tax"* to pay the same.
The rate per cent of the tax to be levied is not mentioned in
either case, nor was it necessary that it should be.   The lia-
bility which the county was permitted to incur, and for the
liquidation of which it was authorized to levy a tax, suffi-
ciently marked the extent of its power to raise money by that
means.   The charters of these companies are declared public
acts, and consequently we must take judicial notice of their
provisions, and give effect to them as we would to any other
public statutes.

While the charter of the Sullivan, Decatur and Mattoon
Railroad Company, as we have just seen, expressly directs the
county authorities to levy an annual tax to pay the interest
on the bonds issued to that company, yet no such express
direction is given in respect to the payment of the principal.
But the power to do so we think is fairly implied.   At that
time the county authorities were not authorized by the general
law to levy a tax for county purposes in excess of fifty cents
on the hundred dollars, and as the legislature deemed it neces-
sary to direct a special tax to be levied to pay the interest, it
becomes a serious question whether it did not intend that a
special tax should be levied to pay the principal also, at least
so far as it might be necessary to pay the bonds according to
their terms.   The presumption can not be indulged that the
legislature, by reason of its omission to mention the principal
as well as the interest in directing a tax to be levied, intended
the principal of the bonds should go unpaid.   A more reason-
able construction would be to say that the legislature intended
the necessary tax should be levied by the county authorities
to pay both, yet as there was more danger of the payment of
the annual interest being neglected, the duty of paying that

by means of a special levy was expressly enjoined. The rule seems to be well recognized that where the legislature confers authority on a county or other municipal body having the power to levy taxes, to contract a debt for some specific object, and makes no special provision for its payment, the very act of conferring the power to create the liability, by implication clothes the municipal authorities with power to levy the necessary tax for its discharge. *Loan Association* v. *Topeka*, 20 Wall. 655; 4 Myers' Fed. Dec. sec. 1163; *United States* v. *New Orleans*, 8 Otto, 381; Myers' Fed. Dec. sec. 1604.

If the rule of construction here laid down is applied to the present case, it removes all difficulty, for it is very clear that if the charters of the railroad companies in question, either expressly or by fair intendment, gave the county board authority to levy and collect a tax sufficient for the payment of the principal and interest of the bonds, that authority necessarily still exists, unless the legislature has provided some other mode of payment equally efficacious, and there is no claim or pretence of that kind. That it is incompetent for the legislature to pass an act that will impair or substantially diminish the means of enforcing a contract, is too well settled to admit of serious discussion, hence all legislative acts passed after the contracting of a valid debt by a county or other municipal corporation, which, if enforced, would deprive it of the means of payment to any considerable extent,— such as a law materially diminishing its powers of taxation,—are uniformly held to be in conflict with that provision of the national constitution which declares: "No State shall pass any * * * law impairing the obligation of contracts." *Wolf* v. *New Orleans*, 13 Otto, 358; *Van Hoffman* v. *City of Quincy*, 4 Wall. 535; *Louisiana* v. *Pittsburg*, 15 Otto, 278.

It is clear from the authorities cited, that if, under the railroad charters in question, the power of the county board to tax is limited only by the amount of bonds it was authorized to issue and actually did issue to said companies, the present

limitation of its power to one dollar on the hundred, if intended to apply to this class of cases, would be inoperative and void.    So far as the tax complained of relates to bonds issued to the Bloomington and Ohio River Railroad Company, we have, as already indicated, no doubt whatever as to the power of the county board to levy it.    As to the tax relating to the other series of bonds, the case is not so clear.    Nor is it, under the facts as now presented, necessary to definitely determine that question.    It is the settled doctrine of this court, that any one objecting to the enforcement of a tax assumes the burden of showing its invalidity.    The presumption is that the tax is just,—that all officers who have had any official connection with it have properly discharged their duties in respect to it.    These presumptions can only be overcome by clear and explicit testimony.    *Chiniquy* v. *The People*, 78 Ill. 570; *Buck* v. *The People*, id. 560; *Beers* v. *The People*, 83 id. 488; *Mix* v. *The People*, 86 id. 312.

We do not think the proofs before us meet the requirements of the law as laid down in the above cases and as here announced.    While it sufficiently appears that bonds were originally issued to both companies, yet it does not appear how many of them were so issued to either of the companies, or whether all of them, or what portion of them, are now outstanding.    It does appear, however, that part of the tax complained of was levied to pay the principal and interest of ten bonds, of the denomination of $1000 each, issued by the county to the Bloomington and Ohio River Railroad Company, and held by one R. D. Lawrence.    And it also appears that the sum of $25,000 was at the same time levied "for the payment of the principal and interest accrued and to accrue on the outstanding bonds of Moultrie county not in judgment, issued to the Bloomington and Ohio Railroad Company *or* to the Decatur, Sullivan and Mattoon Railroad Company."    Now, assuming the interest on both sets of bonds, and the principal on one set only, might thus lawfully be raised by

taxation, it would by no means be a strained or unreasonable construction of this order of the county board to say that the money to be thereby raised was intended to be applied to the payment of the interest and so much of the principal as might lawfully be paid, and for aught that appears, all that portion of the tax complained of may have been required to pay the principal of the bonds issued to the Bloomington and Ohio River Railroad Company, in which case it would have been strictly legal. In addition to this, it does not clearly appear, from the record before us, that at the time of this levy there were any of the other company's bonds outstanding. There probably were. But this was a fact susceptible of direct proof, and should have been made to overcome the presumption which the law indulges in favor of the levy. Upon the whole, we think it is not satisfactorily shown that the levy is invalid.

The judgment will be affirmed.

*Judgment affirmed.*