THE PEOPLE *ex rel.* ANITA HARRIS, County Treasurer and *Ex Officio* Collector of Taxes of Jasper County, Applicant-Appellee, v. CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Objector-Appellant.

Fifth District    No. 5—88—0812

Opinion filed August 2, 1990.

Thomas M. Atherton and Louis E. Miller, both of Bagley, Atherton, Clark & Miller, of Pekin, for appellant.

James G. Tomaw, State's Attorney, of Newton, and Robert G. Grierson, of Craig & Craig, of Mattoon, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Objector, Central Illinois Public Service Company (CIPS), filed a tax objection in the circuit court of Jasper County contending that a tax levy imposed by South Muddy Township was a replacement levy for taxes previously found to be improper. The trial court found that the levy was not a replacement tax and denied CIPS' objection.

During the years 1980-83, CIPS was involved in two real estate tax disputes with the taxing bodies of Jasper County. The first involved the assessment of CIPS' Newton generating station and the second concerned various tax rate objections filed in response to the collector's annual application for judgment.

Pursuant to a stipulation between CIPS, the board of review and several governmental bodies, including South Muddy Township, which had intervened, the Property Tax Appeal Board (PTAB) entered an order setting the assessed value of the Newton generating facility. The parties also agreed that the refund due CIPS would be paid in four annual installments.

The second dispute was also resolved pursuant to a stipulation be-

tween the parties. The circuit court's order, based upon the stipulation, provided that the refund due CIPS would be paid in four annual installments.

As a result of these two judgments, the total annual payment due CIPS for the two refunds was $186,000, the first installment of which was due on January 15, 1985. To pay this, the township levied an additional tax and CIPS objected, contending that it should not be required to pay its own refund. The record indicates that approximately 97% of the township's tax revenue comes from CIPS. The township also levied an additional tax to pay the 1986 installment and again CIPS objected. The trial court ruled, *inter alia*, that the refund orders were judgments against the township, that the township had the authority to levy a tax to pay the judgments, and that the tax levied to pay the judgments was not intended as a replacement levy for taxes previously found improper.

On appeal, CIPS argues that the rate objection and assessment valuation refund orders are not judgments, at least not within the meaning of the above-quoted statutes, and that there is no legal authority for the township to impose the additional levy. We agree.

■■■ A taxing authority must be able to show the specific authority to tax within the bounds of the statute purportedly granting the power to tax (*People ex rel. Newbould v. Wabash Ry. Co.* (1932), 349 Ill. 93, 181 N.E. 610) and the township maintains on appeal, as it did below, that sections 5—5 and 13—9 of the Township Law of 1874 (the Act) (Ill. Rev. Stat. 1985, ch. 139, par. 0.1 *et seq.*) provide the legal basis for levying the additional tax. Section 5—5 of the Act provides:

> "In all suits or proceedings prosecuted by or against town officers, in their name of office, costs shall be recovered as in like cases between individuals. Judgments recovered against a town or against town officers in actions prosecuted by or against them, in their name of office, shall be a town charge, and when collected shall be paid to the person or persons to whom the same shall have been adjudged." (Ill. Rev. Stat. 1985, ch. 139, par. 49.)

Section 13—9 of the Act provides:

> "The moneys necessary to defray the town charges of each town shall be levied on the taxable property in such town in the manner prescribed in the act for raising revenue and other moneys for state and county purposes and expenses." Ill. Rev. Stat. 1985, ch. 139, par. 125.

The township argues that the tax refund orders were judgments, that under section 5—5 of the Act the judgments were township charges, that under section 13—9 of the Act money to pay town charges can be raised by a levy on taxable property, and, therefore, a tax levy to

pay CIPS' refund was proper. While appealing on the surface, this is sophistry at its worst and does not alter the fact that the taxing authority has effectively avoided refunding the illegally collected tax. To permit such would be a triumph of form over substance, of language over reason. Under the township's reasoning, the very illegality of the first levy would form the basis for legally keeping it.

By levying a new tax to pay the refund for taxes illegally collected in the first instance, the township effectively deprived CIPS of its refund and circumvents the orders of the trial court and the PTAB. It would be illogical to hold that a tax refund order is a judgment for purposes of sections 5—5 and 13—9 of the Act. We must presume that in passing this legislation, the General Assembly did not intend an unjust, absurd, or unreasonable result. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 489 N.E.2d 1374.) If an order to refund illegally collected taxes is considered a judgment for which a township could levy a tax, then the tax appeal process becomes meaningless, and refund orders become exercises in futility.

CIPS also argues that the levy was a "replacement tax" for a tax previously found improper. The township responds that CIPS did not raise this objection before the circuit court. Specifically, the township argues that CIPS did not advance this argument in either its motion for summary judgment or the memorandum in support thereof. In holding that the equities of the case were with the township, however, the trial court ruled on this issue and found that the levy was not a replacement tax. We need not resolve this issue, however, as our previous holding on the issue of whether the refund orders were judgments is dispositive of this cause.

In holding that the equities were with the taxing authority, the trial court reasoned that if taxes are illegally collected and used for purposes that benefit the residents of the township, it is only fair that those who received the benefit of the ill-gotten tax be the ones to repay it. Therefore, the court reasoned, there was nothing wrong or inequitable with CIPS paying an additional assessment to pay the refund. This reasoning ignores the underlying fact that the township has effectively retained taxes to which it was not legally entitled.

For the foregoing reasons, the judgment of the circuit court of Jasper County is reversed.

Reversed.

CHAPMAN and HOWERTON, JJ., concur.